IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff / Respondent, | ) | |
| v. | ) | Case No. 09-20133-07-JWL |
| | ) | Case No. 14-2508-JWL |
| DWIGHT RHONE, | ) | |
| | ) | |
| Defendant / Petitioner. | ) | |
| _____) | | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff / Respondent, | ) | |
| v. | ) | Case No. 09-20133-08-JWL |
| | ) | Case No. 14-2487-JWL |
| THEODORE McDOWELL, | ) | |
| | ) | |
| Defendant / Petitioner. | ) | |
| _____) | | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff / Respondent, | ) | |
| v. | ) | Case No. 09-20133-09-JWL |
| | ) | Case No. 14-2500-JWL |
| SHELDON McINTOSH, | ) | |
| | ) | |
| Defendant / Petitioner. | ) | |
| _____) | | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff / Respondent, | ) | |
| v. | ) | Case No. 09-20133-10-JWL |
| | ) | Case No. 14-2498-JWL |
| SAMORA McINTOSH, | ) | |
| | ) | |
| Defendant / Petitioner. | ) | |
| _____) | | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the petitions for relief pursuant to 28 U.S.C. § 2255 filed pro se by defendants Dwight Rhone (Doc. # 1676), Theodore McDowell (Doc. # 1667), Sheldon McIntosh (Doc. # 1672), and Samora McIntosh (Doc. # 1670) (collectively "petitioners"). For the reasons set forth below, the Court **denies** each petition.

### I.     Background

By indictment filed November 5, 2009, involving 20 total defendants, petitioners were charged with a single count of conspiring to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 841. On December 8, 2009, the Court issued writs of habeas corpus ad prosequendum to procure the presence in this Court of petitioners, who were incarcerated in Arizona following convictions in state court there. The United States Marshal's Service executed those writs within the following days, and on January 15, 2010, petitioners were formally arrested pursuant to the federal charge and appeared for their Rule 5 hearing before a magistrate judge.

On January 25, 2010, at a hearing at which petitioners appeared with counsel, the Court granted motions by the Government and two defendants to designate the case a complex case pursuant to 18 U.S.C. § 3161(h)(7) (while overruling one defendant's objection to that designation), set a trial date of November 16, 2010, and ordered that

2

time in the interim be excluded for purposes of compliance with the Speedy Trial Act. By written order of February 12, 2010, the Court reaffirmed those rulings, noting that the case involved 20 defendants, an unusually large volume of evidence (approximately 30,000 pages of documents and approximately 2,900 telephone calls in two languages) for defense counsel to review, ten different counts including conspiracy and money laundering counts, and an allegation of criminal forfeiture of $22 million.

Petitioners filed motions to suppress evidence from searches in Arizona, and the Court conducted an evidentiary hearing on those motions on November 16, 2010, and January 3, 2011. By written order of January 14, 2011, the Court denied the motions to suppress. *See United States v. McDowell*, 2011 WL 124532 (D. Kan. Jan. 14, 2011).

Trial commenced on April 7, 2011, and on April 28, 2011, the jury returned guilty verdicts for all four petitioners. After their post-trial motions were denied and they were sentenced, petitioners filed appeals, but the Tenth Circuit affirmed the conviction and sentence of each petitioner. *See United States v. McDowell*, 713 F.3d 571 (10th Cir.), *cert. denied*, 134 S. Ct. 351 (2013); *United States v. Rhone*, 514 F. App'x 772 (10th Cir.), *cert. denied*, 134 S. Ct. 459 (2013); *United States v. McIntosh*, 514 F. App'x 776 (10th Cir.), *cert. denied*, 134 S. Ct. 486 (2013); *United States v. McIntosh*, 514 F. App'x 783 (10th Cir.), *cert. denied*, 134 S. Ct. 323 (2013).

**II.    Analysis**

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment

was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *See* 28 U.S.C. § 2255(b).

### A. *Arizona Search*

Petitioners argue that their attorneys' trial and appellate performances were deficient with respect to the litigation of petitioners' motions to suppress evidence obtained from the execution of a search warrant at an Arizona residence. "To establish ineffective assistance of counsel, [a] [d]efendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

After an evidentiary hearing, this Court ruled that the warrant was supported by probable cause, based on the evidence that a law enforcement officer detected the strong odor of marijuana from the sidewalk and driveway of the house. *See McDowell*, 2011 WL 124532, at *4-5. In affirming petitioner Theodore McDowell's conviction, the Tenth Circuit upheld this Court's denial of his motion to suppress. *See McDowell*, 713 F.3d at 573-75. Mr. McDowell argued that the officer had improperly violated the house's curtilage while purportedly proceeding to the front door to inquire about a particular person, and the Tenth Circuit conceded that the Supreme Court's decision in *Florida v. Jardines* lent some support to the argument that the area in front of the home

4

may fall within its curtilage. *See id.* at 574 (citing *Florida v. Jardines*, 133 S. Ct. 1409, 1412 (2013)). Nevertheless, the Tenth Circuit held that, whether or not the officer crossed the curtilage, he was entitled to conduct a "knock and talk" investigation, as such investigations "do not contravene the Fourth Amendment, even absent reasonable suspicion." *See id.* (internal quotation and citation omitted). Thus, the Tenth Circuit concluded that "the smell of marijuana that reached [the officer] while he was in the driveway was not fruit of an unlawful search." *See id.* The Tenth Circuit also upheld the denial of motions to suppress in affirming the convictions of petitioners Sheldon McIntosh and Dwight Rhone. *See McIntosh*, 514 F. App'x at 779; *Rhone*, 514 F. App'x at 774. Petitioner Samora McIntosh did not challenge this Court's denial of his suppression motion in his appeal. *See McIntosh*, 514 F. App'x 783.

Petitioners now claim that their attorneys were deficient, in litigating the motions to suppress in this Court and on appeal, in failing to emphasize that the officers' actions at the Arizona residence took place at midnight and later in the night. The Court rejects that argument.

As the Tenth Circuit confirmed, once the officer detected the strong odor of marijuana coming from the residence, probable cause existed to support the search warrant. Thus, petitioners essentially needed to show that the officer violated the Fourth Amendment by approaching the house at midnight, even though, as noted by the Tenth Circuit, a knock-and-talk investigation does not constitute a search under the Fourth Amendment. Petitioners have not cited any authority, however, indicating or suggesting

5

that such investigations become searches late at night. Petitioners quote the following statement from *Jardines*: "Nor as a general matter may a visitor come to the front door in the middle of the night without an express invitation;" that statement is not particularly helpful here, however, because it came in a dissenting opinion, it was essentially dictum in that opinion (the search in that case did not take place in the middle of the night), and the dissenting justice supported that statement only by citation to a state-court opinion. *See Jardines*, 133 S. Ct. at 1422 (Alito, J., dissenting) (citing *State v. Cada*, 923 P.2d 469, 478 (Idaho Ct. App. 1996)).

The other cases cited by petitioners are easily distinguished, as they did not involve the issue of whether a knock-and-talk investigation may be conducted late at night, but rather involved more intrusive conduct. *See Olivo-Ramos v. Attorney General*, 694 F.3d 259, 281 (3d Cir. 2012) (noting that pre-dawn raids of homes "have traditionally been viewed with opprobrium unless the timing is justified by the particular circumstances"); *United States v. Ramirez-Chilel*, 289 F.3d 744, 751 n.8 (11th Cir. 2002) (although court had concern about officers' decision to approach a house to seek consent to a search at midnight, court held that the timing of the search did not negate the voluntariness of the consent given); *United States ex rel. Boyance v. Myers*, 398 F.2d 896, 897 (3d Cir. 1968) (involving execution of a search warrant at 2:30 a.m.; stating that the timing of a search of an occupied home may be a factor in determining the reasonableness of the search, and noting that at common law, prior to the adoption of the

6

Fourth Amendment, "there was a strong aversion to nighttime searches").[1] Nor in any of those cases did the court recognize a rule prohibiting late-night searches. At most, these cases stand for the proposition that the timing of a search may be a factor in evaluating the propriety of that search.

Thus, the most petitioners' attorneys could have done is to argue that the timing of the officers' conduct in this case weighed in favor of finding that such conduct violated the Fourth Amendment. The Court concludes, however, that additional focus on the timing would not have altered the outcome of the motions to suppress. As its written opinion demonstrates, this Court heard evidence concerning the times at which the various events occurred, and it nevertheless concluded that the warrant was supported by probable cause. *See McDowell*, 2011 WL 124532, at \*1-2 (reviewing the officers' testimony, including the fact that one officer first approached the residence at approximately midnight). The Tenth Circuit's opinion also demonstrates it was aware of the midnight hour in concluding that the officer's knock-and-talk investigation did not implicate the Fourth Amendment. *See McDowell*, 713 F.3d at 572-73 (recounting the testimony from the hearing). Thus, petitioners cannot demonstrate any likelihood that, even if their attorneys had stressed the timing more forcefully in their arguments, either

---

[1] Petitioners have also cited *Schaefer v. Yocum*, 860 F. Supp. 2d 958 (D. Neb. 2012). In that case, however, the court did not comment on the timing of a search; rather, in that case involving a retaliation claim brought by terminated officers, a superior stated that he had had concerns about the officers' entering an occupied home at midnight to search for a person who had committed a minor traffic offense. *See id.* at 963.

7

this Court or the Tenth Circuit would have deemed the eventual search to have been unconstitutional, particularly in the absence of any authority indicating that a knock-and-talk investigation may become a search by virtue of the lateness of the hour. The Court therefore denies this claim asserted by petitioners.

### B. *Rules Regarding Timing*

#### 1. RULE 5 APPEARANCE

Petitioners next claim that their attorneys' acted deficiently in failing to make arguments relating to the timing of certain events. First, petitioners argue that counsel should have asserted a violation of Fed. R. Crim. P. 5(a)(1)(A). That rule requires a person "making an arrest" to take the defendant before a magistrate judge "without unnecessary delay." *See id.* Petitioners argue that there was an overlong delay from the time they were taken from state custody in Arizona by detainer shortly after the writs issued on December 8, 2009, until their first appearance before the magistrate judge in this Court on January 15, 2010.

The Court concludes that there was no violation of this provision of Rule 5 in this case because there was no "arrest" (the trigger for the Rule 5 requirement) at the time the writs were executed in Arizona.[2] "Rule 5(a) becomes applicable once the accused is taken into federal custody." *See United States v. Torres*, 663 F.2d 1019, 1023 (10th Cir.

---

[2]Although the Government, in responding to this claim, argued that proper procedures were followed with respect to the writs of habeas corpus ad prosequendum, it did not address the key issue of when an "arrest" occurred in this case.

8

1981) (citations omitted). A writ of habeas corpus ad prosequendum allows federal authorities to obtain "temporary custody" of a prisoner. *See United States v. Mauro*, 436 U.S. 340, 362 (1978). Thus, "the sending state retains full jurisdiction over the prisoner since the prisoner is only 'on loan' to the prosecuting jurisdiction." *See United States v. Kelly*, 661 F.3d 682, 686 (1st Cir. 2011) (quoting *Flick v. Blevins*, 887 F.2d 778, 781 (7th Cir. 1989)). Accordingly, petitioners were not taken into federal custody when marshals executed the writs in Arizona. *See Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006) (for purposes of determining when defendant began serving his federal sentence, defendant was not taken into federal custody by execution of a writ of habeas corpus ad prosequendum). Because petitioners were not taken into federal custody, they were not "arrested" at that time, and Rule 5's requirement of an appearance before a magistrate judge "without unnecessary delay" was not triggered. *See United States v. Pressley*, 2013 WL 1870433, at *2 (W.D. Wash. May 3, 2013) (execution of a writ of habeas corpus ad prosequendum did not constitute an "arrest" for the purpose of Rule 5(a)(1)(A)); *see also Kelly*, 661 F.3d at 687 (execution of a writ of habeas corpus ad prosequendum did not constitute an "arrest" for the purpose of the Speedy Trial Act). Indeed, the record in this case includes entries for the "arrest" of each petitioner on January 15, 2010, on the date of their initial appearance pursuant to Rule 5.

Therefore, because no violation of Rule 5 occurred in this case, counsel did not act deficiently in failing to argue that such a violation occurred, and petitioners could not

9

have suffered any prejudice from that failure at any rate.[3] For that reason, the Court denies petitioners' claims relating to Rule 5.

### 2. TRIAL DATE

Petitioners also claim that their attorneys were deficient in failing to argue that their trial did not begin within 70 days after their initial appearance, as required by the Speedy Trial Act (STA), 18 U.S.C. § 3161(c)(1). The Court deemed this to be a complex case, and it ordered that the time until a continued trial date be excluded from computation under the STA, based on its finding that "the ends of justice served by the granting of such continuance outweigh[ed] the best interests of the public and the defendant[s] in a speedy trial." *See* 18 U.S.C. § 3161(h)(7). Therefore, there was no violation of the STA here, and counsel were not deficient in failing to argue that there was such a violation (and petitioners could not have suffered any prejudice from such failure).[4]

---

[3]In addition, even if there had been a violation here, petitioners have not shown that the claims against them would have been dismissed as a result. *See United States v. Ambriz-Valenzuela*, 2011 WL 2579773, at *4 & n.7 (D. Kan. June 28, 2011) (citing cases and noting generally "that the only remedy available under Rule 5(a) is suppression of any evidence obtained during the delay, and if there is no evidence to suppress, dismissal is not an appropriate alternative remedy"). In this case, petitioners have not alleged that any evidence obtained in the interim after the execution of the writs should have been suppressed. Thus, because there would not have been any particular remedy available to petitioners, their attorneys were not deficient in failing to raise the issue of a Rule 5 violation, and no prejudice could have resulted from that failure.

[4]In arguing that a violation of the STA occurred here, petitioners note that the filing of a superseding indictment did not reset the speedy-trial clock. *See, e.g.*, *United*
(continued...)

Petitioners also argue that their attorneys were deficient in failing to argue that their trial did not begin within 120 days after their arrival in Kansas, as required by the Interstate Agreement on Detainers (IAD). *See* 18 U.S.C. App. 2 § 2, Art. IV(c). The Tenth Circuit specifically rejected the argument by three of the petitioners that the IAD was violated here. *See McIntosh*, 514 F. App'x at 781-83; *McIntosh*, 514 F. App'x at 793-95; *Rhone*, 514 F. App'x at 774. The Tenth Circuit noted that "[a] defendant may, indeed, waive his IAD rights by agreeing to a trial date that is later that the IAD requires." *See McIntosh*, 514 F. App'x at 782 (citing *New York v. Hill*, 528 U.S. 110, 118 (2000)). The Tenth Circuit held that petitioners waived this argument because, at the hearing on the motions to have this case designated as complex under the STA, at which the Government proposed a trial date beyond the IAD's deadline, petitioners were present with counsel, were asked if they objected to the designation as complex, and failed to object. *See id.* at 782-83. In light of that waiver, petitioners did not suffer any prejudice from the failure of their attorneys to argue for a violation in this Court (or from the failure of Mr. McDowell's attorney to raise the issue on appeal).

Petitioners also argue that their attorneys were deficient in failing to object to the continued trial date at the hearing. The Court rejects this claim as well, as it concludes

---

⁴(...continued)
*States v. Mora*, 135 F.3d 1351, 1355 (10th Cir. 1998). They also note that the Court did not make a new complex-case designation after the filing of the superseding indictment, but they have not cited any authority requiring a second designation. Indeed, if the clock did not reset upon the filing of a superseding indictment, there would be no reason why the original designation would not still be effective.

11

that counsel acted quite reasonably in agreeing to a later trial date (indeed, two defendants in this case also moved the Court for designation of the case as complex under the STA). As the Court noted in granting the motions for designation as a complex case, this case involved 20 defendants, and the defense attorneys were charged with reviewing up to 30,000 pages of documents and hundreds of hours of wiretap recordings before trial. Moreover, petitioners cannot show the required prejudice here because, based on the volume of that evidence, the Court would have overruled any objections lodged by petitioners' attorneys to a continued trial date (just as it overruled the objection of the lead defendant to a later trial date). *See* 18 U.S.C. App. 2 § 2, Art. IV(c) (under IAD, court may grant any necessary or reasonable continuance). Accordingly, the Court denies this claim by petitioners.

### C. *Misconduct*

Messrs. McIntosh, McIntosh, and Rhone claim that their attorneys were deficient in failing to investigate or oppose various instances of governmental and judicial "misconduct". The Court denies each of these specific claims.

First, petitioners argue that counsel failed to investigate or obtain evidence concerning the woman that police officers were seeking at the residence in Arizona where they ultimately conducted a search. Petitioners have not submitted with their petition, however, any such evidence that their counsel allegedly should have obtained. Nor have petitioners explained how such evidence would have made altered the outcome

12

of their motions to suppress.[5] Accordingly, petitioners have failed to demonstrate the required prejudice from the alleged failure by their attorneys.

Second, petitioners argue that counsel should have compared "a copy of the stamped search warrant later produced by law enforcement with photograph of warrant [at the Arizona residence], in light of the allegation that it was not a filed copy." Again, however, petitioners have failed to submit evidence to support this claim or to explain how such a comparison would have resulted in the suppression of the evidence from the residence.

Third, petitioners argue that counsel failed to "call" the commissioner who signed the search warrant to confirm that he did in fact sign that document. It is not clear whether petitioners mean that their counsel should have contacted the commissioner or should have called him as a witness at the hearing on the motions to suppress. Petitioners have not shown that either action would have made a difference, however, in light of the fact that Commissioner Barth submitted an affidavit stating that the signature on the warrant was indeed his. Moreover, the Court found credible the officer's testimony at the suppression hearing that he spoke with the commissioner, that the commissioner indicated that he was signing the documents, and that the officer received the documents back with the commissioner's signature. *See United States v.*

---

[5]As noted above, the Court found credible the testimony of an officer that he was seeking the woman at the residence, and it thus rejected the defendants' pretext argument. *See McDowell*, 2011 WL 124532, at *5.

*McDowell*, 2011 WL 124532, at *5. The Court further concluded that, even if the commissioner did not sign those documents, suppression would still not have been appropriate under the good-faith exception to the exclusionary rule. *See id.* at *6. Therefore, petitioners have failed to demonstrate the required prejudice from counsel's failure to investigate further or litigate differently the issue of the commissioner's signature.

Fourth, petitioners argue that counsel failed to investigate whether the commissioner or their state-court trial judge had taken an oath of office. Petitioners have not submitted any evidence, however, that either person had not taken such an oath. Nor have petitioners explained how such a failure would have altered the outcome of the suppression motions, particularly in light of the Court's conclusion that the good-faith exception would apply here. *See id.* Nor have petitioners explained how the qualification of their state-court trial judge relates to this case. Accordingly, petitioners have failed to establish any prejudice from this alleged failing by their counsel, and the Court therefore denies these claims for ineffective assistance of counsel.

### D. *Sentencing – Theodore McDowell*

Petitioner Theodore McDowell asserts a claim that he was sentenced improperly pursuant to *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Specifically, Mr. McDowell argues that because the jury found only that he was involved in a conspiracy involving 1,000 kilograms or more of marijuana, he should not have been sentenced based on a sentencing guideline applicable to a drug quantity between 3,000 and 10,000

kilograms. *See* U.S.S.G. § 2D1.1(c)(3) (Level 34).

Just last week, however, the Tenth Circuit rejected an identical claim. *See United States v. Cassius*, __ F.3d __, 2015 WL 327824 (10th Cir. Jan. 27, 2015). The Court held that "so long as the court does not use its own drug quantity finding to alter the defendant's *statutory* sentencing range, such an enhancement is entirely consistent with *Alleyne*. *See id.* at *1 (emphasis in original). In the present case, the statutory sentencing range for Mr. McDowell's offense involving 1,000 kilograms or more of marijuana was between ten years and life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(vii). By attributing more than 3,000 kilograms of marijuana to Mr. McDowell for purposes of his sentencing under the guidelines, the Court did not alter his applicable statutory sentencing range, but instead applied an offense level that yielded a sentencing range under the guidelines of 151 to 188 months.[6] Accordingly, a jury finding was not required for the drug quantity determination at Mr. McDowell's sentencing, which thus did not run afoul of *Alleyne*, and the Court therefore denies this claim.[7]

### E. Sentencing – Amendment 782

Finally, each petitioner seeks resentencing with a two-level reduction of his base

---

[6]The Court sentenced Mr. McDowell to 151 months, at the low end of the range, which term was then reduced to a sentence of 97 months to account for time already served by Mr. McDowell in prison in Arizona.

[7]Inexplicably, the Government has failed to respond to this claim by Mr. McDowell (even after that failure was noted in petitioners' reply brief). Nevertheless, because Mr. McDowell is clearly not entitled to relief on this claim, the Court declines Mr. McDowell's invitation to grant the claim as unopposed.

15

offense level pursuant to Amendment 782. The Government responds that such a request for relief is not properly included within a Section 2255 petition, and in their reply brief, petitioners state that they "concur and will file separate motions under § 3582(c)(2), if this Court so desire." The Court agrees that such a request is more appropriately made by separate motion under Section 3582. The Court therefore denies this claim for relief without prejudice to petitioners' filing the appropriate motions.

Accordingly, petitioners' Section 2255 petitions are denied in their entirety.[8]

### III.  Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[9] To satisfy this standard, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004)

---

[8]Because the petitions and records of this case conclusively show that petitioners are not entitled to relief, the Court need not conduct a hearing on their claims. *See* 28 U.S.C. § 2255(b).

[9]The denial of a Section 2255 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

16

(quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). Because it is clear that petitioners are not entitled to relief on their constitutional claims, the Court denies certificates of appealability in this case.

IT IS THEREFORE ORDERED BY THE COURT that Dwight Rhone's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. # 1676) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT that Theodore McDowell's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. # 1667) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT that Sheldon McIntosh's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. # 1672) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT that Samora McIntosh's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. # 1670) is hereby **denied**.

IT IS SO ORDERED.

Dated this 4th day of February, 2015, in Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum

United States District Judge